[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage which was referred by the Middlesex Judicial District to the Regional Family Trial Docket. Prior to the commencement of trial the parties reached agreement on custody and visitation issues and signed a written agreement dated November 14, 2000. It was approved by the court on the same day and will be incorporated by reference as part of the court's decree. Over 3 trial days the parties presented evidence on financial issues including child support, alimony, health insurance, division of assets and liabilities, as well as counsel fees. The court heard testimony from the parties, a business evaluator and several other witnesses. Many exhibits were entered into evidence. The court has considered all of the credible evidence and all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here. The court makes the following findings of fact and orders.
The court finds that it has jurisdiction over the marriage. One party has resided in Connecticut continually for more than one year prior to the bringing of this action. The parties were married on July 16, 1994 in Chester, Connecticut. They have 2 minor children issue of the marriage, namely Paulina R. Adams, born June 6, 1997, and Brianna M. Adams, born July 16, 1998. No other minor children have been born to the wife since the date of the marriage. The parties have not been recipients of state assistance. The marriage of the parties has broken down irretrievably with no hope of reconciliation.
The plaintiff is 43 years old. He is in good general health. This is his second marriage. His first marriage ended in divorce without children. He has an engineering degree received from Leheigh University in 1981. He worked as a metallurgical engineer for various companies until 1992 when he left his employment with Revere Aerospace and went to work full time for Yalesville Plating and Metals Processing, Inc., a company which he had purchased with a partner in 1988. Yalesville is a Subchapter S corporation, with a plant in Wallingford where they do metal processing and plating. The plaintiff is also the owner and CEO of ADR, Ltd., a Chapter C corporation which was a spinoff from Yalesville that also does metal processing.
The defendant is 37 years old. She has had some health problems in the past including a back injury, a cyst in the sinus and an intestinal CT Page 4673 problem. But, at the moment, her general health is good. She was born and raised in Poland and graduated from high school in 1983. She attended one year of university in Poland before going to Greece and then to the United States in 1985. This is her second marriage and she has a daughter, age 15, from that marriage who lives with her without support from the father. She received her associates degree in computer science in 1992 and has worked for the last four years at Aetna making use of her computer skills as a database administrator. At the time of the marriage, the defendant had a car, some furniture and other assets worth no more than $10,000.
Much of the trial was concerned with the issue of fault. The plaintiff testified that the defendant was controlling, unreasonable, uncompromising, and critical of him in public and in private. He feels that his wife meddled in his business and was lacking in understanding about the financial realities of his business. However, the plaintiff made a point of testifying that the defendant had always had these faults. Since the parties lived together for almost a year before they were married, the plaintiff was well aware of the defendant's personality before the marriage.
The defendant presented evidence to support her contention that the plaintiff is at fault for the breakdown of the marriage. That evidence leads to the conclusion that the plaintiffs behavior with another woman was the primary cause of the breakdown. Specifically, after the birth of the parties' second child the plaintiff began an emotional relationship with a woman named Susan Joslin who worked near the plaintiffs plant. The plaintiff became friendly with Ms. Joslin and began visiting her regularly in her office. In February 1998, Ms. Joslin began to do financial consulting for the plaintiffs businesses. The plaintiff and Ms. Joslin regularly spent late afternoon and early evening on Tuesday working together at the plaintiffs office. The defendant knew that the plaintiff had grown cold and distant. She suspected that Ms. Joslin was the reason. So she confronted Ms. Joslin at the Chamber of Commerce Christmas party in December of 1999 to which the plaintiff had not invited her. Instead, the plaintiff and Ms. Joslin had agreed to meet at the party. Within a few days of this confrontation, the parties went to one marital counseling session after which the plaintiff decided to move out of the marital home and to begin this dissolution action. By April of 2000 the plaintiff was having a sexual relationship with Susan Joslin which has continued. The plaintiff spends the night at Ms. Joslin's apartment about half of the time. The sexual relationship with Ms. Joslin did not begin until after the separation but the plaintiff had made an emotional break with his wife after the birth of their second child in June 1998 when he began to distance himself from his wife and began developing a close personal attachment with Ms. Joslin. The plaintiff is primarily at fault CT Page 4674 for the breakdown of the marriage.
Fault is one factor to be considered by the court in determining alimony and the division of assets. While alimony, in whatever form, or an assignment of property is not to be considered either as a reward for virtue or as a punishment for wrongdoing, a spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive financial kudos for his or her misconduct. Moreover, in considering the gravity of such misconduct it is entirely proper for the court to assess the impact of the errant spouse's conduct on the other spouse. Robinson v. Robinson, 187 Conn. 70, 72 (1982). However, fault is only one factor to be considered and cannot be given precedence over any other enumerated factor. Sands v. Sands, 188 Conn. 98, 102 (1982).
The marital home at 89-3 Wig Hill Road in Chester was purchased in May 1990 by the plaintiff and his first wife, Debra. It is a large contemporary house on 4 acres on a private lane. The purchase price was $265,000. There was a bank mortgage for $238,500. The balance of the purchase price came from a loan from Debra's mother which was secured with a second mortgage on the property. The plaintiffs marriage to Debra was dissolved on April 15, 1992. In connection with that dissolution the plaintiff filed a financial affidavit dated April 15, 1992 in which he swore that the total equity in the house was $2,000. The defendant began to contribute to the payment of the mortgage as soon as she moved in with the plaintiff in the summer of 1993. At the time of the marriage of the parties on July 7, 1994 the property had a value of $265,000. On August 17, 1995 the plaintiff conveyed an undivided one-half interest in the property to the defendant and then remortgaged the property for $221,400 on a 15 year amortization schedule. During the marriage the parties made payments of $13,985.81 toward the mortgage to Debra's mother. There was no evidence how much of this represents reduction of principal. During the marriage the parties paid $193,371.86 toward bank mortgages on the property. This figure includes $33,036.88 paid by the defendant after the parties separated. During this time the principal was reduced approximately $54,000. The present balance on the bank mortgage is approximately $167,000, and the fair market value of the property is $305,000. Therefore, the total equity is approximately $138,000. In light of all relevant factors, it is fair and equitable that the defendant retain ownership of the property to provide a home for her and the children. It is also fair and equitable that the defendant pay 50% of the equity to the plaintiff. This figure reflects the source of the asset, the necessity of providing the defendant and children with a place to live, the fault found for the breakdown of the marriage, the other assets and liabilities assigned to the parties, as well as all of the other relevant statutory criteria which make up the mosaic of this decision. The defendant will be given the option of paying this sum, $69,000, to CT Page 4675 the plaintiff at any time until the youngest child turns 18. The obligation will bear interest at 6% per annum and will be secured by a second mortgage.
The plaintiff owns a 1976 Triumph Spitfire with a value of $500. The car is inoperable. The defendant drives a 1999 Toyota Sienna leased at approximately $370 per month by Yalesville Plating which the plaintiff was ordered to keep current pendente lite. The plaintiff drives rental cars or a 2000 BMW recently purchased for $31,000 by ADR, Ltd. with $6,000 down.
There was substantial dispute about the plaintiffs income from his business. The plaintiff claims a weekly gross of $994 and a weekly net of $630. This works out to a gross of $51,688 per year. The defendant argued that the plaintiffs actual yearly income is in excess of $90,000. However, for purposes of child support, the defendant submitted a worksheet showing the plaintiffs earnings to be $75,000 per year, or $1,442 gross per week. Pinning down the plaintiffs earnings is not easy. Some of his compensation from his corporations comes in forms that are hard to quantify. He has a nominal salary of $62,000, paid monthly. But there is not always enough money in the corporate accounts to pay his salary. In 2000 he was paid 10 out of 12 months for a total of approximately $52,000. However, the plaintiff receives compensation in other ways. Many of his personal expenses are paid for by the businesses with corporate credit cards. Some of these personal expenses are accounted for properly on the corporate tax returns and some are not. It is impossible to determine the extent of personal expenditures because the businesses did not keep the portion of the credit card statements where the charges are itemized. The plaintiffs credibility on the issue of his compensation is lacking. His explanation of his use of rental cars paid for by the businesses defies understanding. The same can be said for his explanation for ADR's December 2, 2000 purchase of the 2000 BMW. Although the plaintiff testified that this car would be reserved for business use, it is reasonable to conclude that the plaintiff will be using this as his personal car once the dissolution is concluded. Finally, the plaintiffs explanation of why the companies do not keep copies of the itemized credit card bills is not believable. The court is forced to conclude that they are not kept because they would show a consistent use of the business credit card for personal expenses.
The plaintiffs credibility is also placed in doubt by his conviction in 1996 of four violations of the Federal Clean Water Act. Specifically, the plaintiff was found guilty of knowingly making material false statements in monitoring reports of Yalesville's discharge of wastewater. Each violation is a felony which impeaches the plaintiffs credibility. See, Connecticut Code of Evidence, Section 6-7. The defendant was sentenced to CT Page 4676 one year probation with six months home confinement and a $40,000 criminal fine which he was ordered to pay at the rate of $3,335 per month. The plaintiff was discharged from probation in 1997 but he stopped paying toward his fine in 1998, leaving an unpaid balance of $5,990. The plaintiff still owes a balance of $5,900 on the criminal fine.
Having considered all of the evidence, the plaintiffs earnings are determined to be $65,000. Although he does not always get paid as scheduled, and is only receiving about $52,000 in annual salary, there are personal expenses by the businesses of about $13,000 per year. Calculating child support based upon $65,000 of gross earnings for the plaintiff results in presumptive support of $222 per week. There are no factors which would require deviation from this figure. The defendant pays for health insurance available for the children through her employment at a cost of approximately $85 per month. It is equitable for the plaintiff to reimburse the defendant for the full cost of this coverage and for the parties to share the cost of unreimbursed medical and dental expenses as required under the Guidelines. The Guidelines percentages are 37 % for the plaintiff and 63 % for the defendant. The defendant has child care expenses of $300 per week which should be shared in the same percentages.
The value of the two corporations, Yalesville Plating and Metals Processing, Inc. and ADR, Ltd., was hotly contested. Gary Gomola, a Certified Pubic Accountant and Certified Valuation Analyst, did an analysis of both companies and testified that Yalesville has a value of $204,000 and ADR has a value of $17,700. These figures are highly questionable. Mr. Gomola used the excess earnings method to calculate value. This method relies upon certain judgments by the evaluator which can change the total value wildly if made in a different way. For example, it is customary to use a weighted average of adjusted earnings, giving more weight to earnings in recent years. Mr. Gomola decided to use an unweighted average of adjusted earnings. If a weighted average had been used, there would have been little or no value in the companies. Another example is that Mr. Gomola's capitalization rate is a pure value judgment which was built in such a way as to not reflect the particular risks and problems of these specific companies. Finally, the marketability discount looks to be far lower than justified given the competition in this business, the potential environmental hazards, and the excessive costs associated with closing a plating facility. In short, little or no reliance will be placed upon Mr. Gomola's analysis. These companies have value which is based upon the ability of the plaintiff to earn a living so that he can pay his child support. Yalesville was purchased before the marriage. ADR was merely a spinoff from Yalesville. The best evidence is that Yalesville and ADR have a total value of $130,000, the price paid for Yalesville in 1988. CT Page 4677 Considering all relevant factors, it is fair and equitable that the plaintiff retain his ownership of Yalesville and ADR without payment to the defendant.
The plaintiff has two life insurance policies on his life: one with First Penn-Pacific Life Insurance Co. in the amount of $400,000, and one to CNA in the amount of $300,000. The first policy costs the plaintiff $8 per week. The CNA policy is "key man insurance" paid for by Yalesville and designed to pay $100,000 toward the closure of the business and $200,000 for the college education of the children. Both policies are affordable by the plaintiff. The defendant has a life insurance policy with First Penn in the amount of $250,000 on her life. This policy costs $4 per week and is affordable by the defendant.
Both parties have some retirement funds. The defendant has an Aetna ISP account through her employment with a balance of approximately $14,000. The plaintiff has a North American Fund SARCEP with a balance of approximately $6,300, a Manulife-Venture 401K with a balance of approximately $45,500, and an A.G. Edwards 401K with a balance of approximately $27,750. Approximately $41,240 of the plaintiffs funds were accumulated prior to the marriage. All of the defendant's funds were accumulated after the marriage. The fair and equitable way to deal with these funds is to allow the plaintiff to keep the first $41,240 and to split the balance of all the funds equally.
The defendant has three mutual funds. The Pennsylvania fund has a balance of approximately $1,000 which was accumulated prior to the marriage. The Oppenheimer fund has a balance of approximately $300 and the Eaton Vance fund has a balance of approximately $4,800. These balances were accumulated after the marriage.
The parties have substantial credit card debt. There is a joint Chase Platinum Visa which had a balance of approximately $8,500 at the time of separation. The plaintiff has continued to use the card and has charged at least $5,500 for attorney's fees and has been making regular monthly payments. There is a joint Bank One Visa which had a balance of approximately $12,000 at the time of the separation. The defendant used the card to charge attorneys fees of approximately $3,000. The defendant has a First USA charge card which has a balance of approximately $12,708 which she has used for her attorneys fees.
The court orders:
1. Dissolution of the marriage.
 2. The stipulation as to custody and visitation dated CT Page 4678 November 14, 2000 is incorporated by reference into this decree.
 3. The plaintiff shall pay to the defendant child support in the amount of $222 per week. Child support shall be payable until each child attains the age of 18 years, but if still in high school, support shall continue through high school graduation but not beyond the age of 19 years. In addition, the plaintiff shall pay 37% of the defendant's child care expenses in accordance with the Guidelines.
 4. The defendant shall maintain medical insurance for the children through her employment. The plaintiff shall reimburse her 100% of that cost. The plaintiff shall pay 37% and the defendant shall pay 63% of the cost of unreimbursed medical and dental expenses of the children in accordance with the Guidelines.
 5. The plaintiff is ordered to convey to the defendant all of his right title and interest in and to the marital home at 89-3 Wig Hill Road in Chester within 30 days. Thereafter, the defendant shall have exclusive possession of the real estate and shall be responsible for the payment of all expenses of that property including mortgages, liens, taxes, and insurance, and shall indemnify and hold the plaintiff harmless from any further responsibility for these expenses. The defendant shall pay to the plaintiff the sum of $69,000 on the earlier event of the defendant's remarriage, her death, the sale of the marital home, or July 16, 2016. The defendant shall execute a promissory note for this indebtedness which shall be secured by a second mortgage on the marital home. The promissory note shall bear interest at the rate of 6%, and shall contain customary language for the payment of attorney fees and costs in the event of collection. There shall be no prepayment penalty.
 6. The defendant shall have continued possession and control of the Toyota Sienna until the completion of the present lease. The plaintiff as alimony, shall pay or cause to be paid, the lease on the vehicle until completion, at which time the defendant shall surrender possession. At the time of surrender the plaintiff shall pay the defendant the sum of $15,000 CT Page 4679 as lump sum alimony. Alimony is not modifiable as to term or amount. There shall be no other alimony paid by either party.
 7. The plaintiff is the sole owner of the stock of Yalesville Plating and Metals Processing, Inc. and ADR, Ltd., free and clear of any claim of the defendant.
 8. The defendant is the sole owner, free and clear of any claim of the plaintiff, of the following assets shown on her financial affidavit: the Fleet Bank checking, the Liberty Bank joint account with her daughter, the Aetna ISP, and the Aetna stock options. The plaintiff is the sole owner, free and clear of any claim of the defendant, of the following assets shown on his financial affidavit: the First Union checking account and the Pennsylvania mutual fund.
 9. The parties shall each maintain the existing life insurance policies on their lives. All shall be for the benefit of the minor children as long as they are minors and not emancipated, except for $100,000 of the policy with CNA which may be payable to Yalesville as "key man" insurance.
 10. The plaintiff shall retain the premarital value of $41,240 in his Manulife-Venture 401K and his A.G. Edwards 401K. The balances in excess of this amount in these accounts plus the balance of the North American Fund SARCEP plus the balance of the defendant's Aetna ISP account shall be equalized between the parties. This equalization shall be effectuated by transfers, assignments, and/or Qualified Domestic Relations Orders as required by the plan administrators. Both parties are ordered to sign any documents necessary to effectuate this equalization. The provisions of this paragraph encompass a property order and not alimony. The court shall retain jurisdiction to carry out the provisions of this paragraph.
 11. The plaintiff shall retain title to the Triumph Spitfire free and clear of all claims of the defendant.
 12. The plaintiff shall pay the sum of $6,000 to Bank CT Page 4680 One Visa within 60 days. This represents one-half of the balance at the time of the separation. The defendant shall be responsible for the payment of the balance on that credit card and shall indemnify and hold the plaintiff harmless from any further responsibility for the account. The plaintiff shall pay the sum of $4,250 to Chase Platinum Visa within 60 Days. This represents one-half of the balance at the time for the separation. The defendant shall indemnify and hold the plaintiff harmless from any further responsibility for the account. The defendant shall be responsible for the payment of the First USA charge card and shall indemnify and hold the plaintiff harmless from any further responsibility for that account. The plaintiff shall be responsible for the debts to the U.S. District Court, Attorney Michael Dowley, and to Gould Gillen, all shown on his financial affidavit. The defendant shall be responsible for debts to Jule Crawford, Attorney Adelmen, Harold Levine, Gary Gomola, Gatehouse and Shoemaker, and Budlong Barrett, all shown on her financial affidavit.
 13. The plaintiff shall be entitled to take the younger child as a dependency exemption as long as he is entitled to do so as a matter of federal law and as long as he is current in his child support. The defendant shall be entitled to take the older child as a dependency exemption as long as she is entitled to do so as a matter of federal law.
 14. The parties have submitted conflicting lists of miscellaneous personal property for distribution. No evidence was presented as to the value of this property. With respect to all such items of personal property shown on these lists the parties are ordered to attempt to reach agreement on an equal distribution based upon fair market value. If the parties are unable to reach agreement, the parties are referred to Family Relations for investigation, conciliation, and report.
 15. The parties shall each be responsible for the payment of their own counsel fees.
JOHN W. PICKARD CT Page 4681 JUDGE OF THE SUPERIOR COURT